Thank you, Your Honor. Good morning, and may it please the Court, I'd like to reserve five minutes for rebuttal. My name is Jim Bopp. I represent the plaintiffs below Alaska Right To Life in this case involving a First Amendment facial and as-applied challenge to provisions of Alaska campaign finance law that imposes extensive restrictions, including prior registration, PAC-type reporting, disclaimers, and contribution limits on any entity that mentions the name of any state candidate in any communication anywhere in Alaska or the world within 30 days of an election. These restrictions go way beyond the narrowly tailored requirements for federal electioneering communications approved in McConnell v. FEC, and the state of Alaska has failed to meet its strict scrutiny burden that these restrictions are narrowly tailored to meet any compelling governmental interest. There are two ways of examining the effect of the... Before we get to that, I have some fundamental questions about your standing. That is to say, it looks to me as though there are three very closely related organizations, one of which registered, complied with the statute, and did the advertising that it sought to do. Your organization looks to me virtually identical to the organization that complied fully and had no problem with it in the sense of they actually got to do it. Why do you have any standing to challenge in that, given that? Well, Alaska Right To Life is set up classically like literally thousands, if not tens of thousands, of not-for-profit organizations. That is, their central membership organization and corporation is a 501C4. That's the plaintiff here. And then they have separate segregated funds, a 501C3, which is a charity treated under the Internal Revenue Code, and a separate PAC, which is subject to regulation by both the state of Alaska for any political activity governed in state elections and governed by the Federal Election Campaign Act for any activity governed by the federal election law regarding federal activities. And the question here is not can they use their PAC for such activities, but must they use their PAC in order to engage in issue advocacy activities that are protected by the First Amendment. And, of course, you look at the cases such as Austin v. Michigan Chamber of Commerce or Mass Citizens for Life v. FEC. They had PACs. In other words, each of those organizations had federally regulated PACs, but they didn't want to use PAC money. And PAC money is highly regulated. It's subject to contribution limits, just like the money that would have to be used in Alaska is subject to contribution limits. It is subject to reporting. It is subject to a myriad of organizational requirements. In Alaska, it even goes further. You have to be prior registered before you can engage in any communication. You have to tell your contributors that the money might be used for an electioneering communication, all of which impose prior restraints on the use of the money. The money is then subject to the organization is subject to reporting both all their contributors and all their expenditures in perpetuity, even though they only do one, what's called an electioneering communication. So it's all of that panoply of restrictions and requirements that the Alaska Right to Life does not believe it must comply with under the Constitution in order to do what is called under the state election law an electioneering communication. So in other words, separate funds governed by separate sets of laws. If we cannot use this fund for that purpose, then we are suffering a restriction on our speech. Why is the PAC not a part of this lawsuit? Because we don't object to the requirements that are imposed upon the PAC. What we object to is any communication that mentions the name of a candidate anywhere in the world by Alaska Right to Life has to be governed by PAC restrictions. We believe that that is unconstitutional. Now, you can look at this electioneering communication law in two different ways. One is the category of speech that is affected by the law. And secondly is the level of regulation that is imposed upon that speech. Now, with respect to the category of speech that is affected, you should compare the federal electioneering communication provision approved in McConnell v. FEC with Alaska's law. And Alaska's law is way broader and more burdensome in its restrictions. That is its prohibition on the use of the Alaska Right to Life general treasury funds. That's an organization that is not a state-recognized PAC or registered PAC. It may not engage in this communication. That is, the federal electioneering communication law said that if you mention a clearly identified candidate in a broadcast ad with other requirements, it's subject to restriction. In Alaska, it is a, if you mention, if you had a, quote, directly or indirectly a candidate in any communication, it is subject to the restrictions. The federal electioneering communication provision has a targeting provision that says that the communication has to go to 50,000 of people within the district or state that would vote on that particular candidate. In Alaska, it is any communication. A communication published in Tokyo, Japan, is subject to the prohibitions and limitations of electioneering communications. It is the black... I'm not sure that I, why should I care about the possibility of Japan? Tell me, do you want to do electioneering in Japan? No, because the scope of the statute is overly broad. In other words, under First Amendment strict scrutiny analysis, any restriction on speech must be both not overbroad, that is, only encompass the amount of speech that can be legitimately subject to regulation, that is, narrowly tailored, pursuing a compelling interest, and secondly, not vague. So I am describing the overbreadth nature of the communications that are limited and restricted under Alaska law. But as I understand the Alaska statutory scheme, it's communication with respect to an election in Alaska. That is to say, if you're just publishing something in Japan irrelevant to an election in Alaska, I don't think you're covered by the Alaska statute, are you? No, you wouldn't be if you directly or indirectly identify a candidate. In Alaska? No, a candidate for public office in an Alaska office. In other words, it's a candidate. It's not, the targeting requirement is contained in federal law. That is, you have to, the communication has to go to constituents of the candidate. But there is no such requirement. If you're a candidate... Maybe I'm misunderstanding the Alaska statute. You are indeed, because... Can I ask a question? Sure. You're telling me that Alaska statute would control, in terms of the reporting requirements and registration requirements, if your organization sought to influence an election in Japan? No. If we mention the name, directly or indirectly, of a candidate for public office in the state of Alaska... In Alaska, yeah. If we mentioned his name in a communication in Chicago, it is governed by this statute. If we would mention his name in Chicago, it is governed by the statute, because there's no targeting requirement. There is a targeting requirement under federal law about who receives the communication. Now, this strikes me as an odd construction of the statute. Do we have any authority for construction of the statute that says that's how it's meant to be read? No. I'm just going by its plain language. I'm not familiar with any interpretive rules. Okay. Are you asking for a certification of the Alaska Supreme Court by us as to what the statute might mean on that point? I don't think it's material to your decision. I mean, I think that there are so many overbreadth... Oh, I see. So it's not material in the sense that it's overbroad even off to one side of this. Even if it were to be narrowly construed to encompass only communications made to residents in Alaska, which is not contained in the statute, it would not resolve the constitutional issue that you're facing, because there's multiple overbreadth aspects of this rule. And there is vagueness in the rule, and the burdens that are imposed upon the communication go way beyond anything that can be justified constitutionally. So it would not resolve the issue that you have before you. And finally, there is a requirement of Alaska law that the issue discussed in the communication must have national, state, or local importance. Now, while there's no comparable content requirement in the federal electionary communication provision, this does introduce vagueness into the statute. Now, certainly strict scrutiny applies here. As this court said in Arizona Rights Alive, if it's a content-based restriction or limitation, the strict scrutiny is applicable. And, of course, you look to the content of the communication. Does it directly or indirectly identify a candidate, end of quote, in order to determine whether this panoply of restrictions and limitations apply? Now, that is true even if this would be looked at as simply a disclosure statute. And California Pro-Life Council and ACLU versus Heller both involved pure disclosure statutes that were subject to strict scrutiny. And, of course, in both cases, the burden was upon the state to demonstrate that the law was narrowly tailored and was supported by compelling interests. But this panoply of regulation goes beyond disclosure. It includes a number of additional limitations, including contribution limits to the organization that may make the electionary communication. Prior registration, communications that must be made to donors in order to accumulate the money that can be used to simply, directly, or indirectly mention the name of a candidate. Now, you would help me if, in the course of your argument, you could tell me what cases you rely on for your argument that is unconstitutional. I understand the general outline of your argument, of course, but I would be helped in addition if you could tell me what cases you think compel us to agree with you, compel or allow. I shouldn't be so narrow. Well, I think McConnell versus FEC is the seminal case on the subject, and that's why the difference between the federal electionary communication provision and the Alaska electionary communication provision, both on the scope of communications affected and by the extent of the regulation, is pertinent. Now, in McConnell, the electionary communication provision was upheld because of two things. One, under a strict scrutiny analysis with a burden on the government, and that is, one, that it was not vague, and secondly, that it was not overbroad. And in that analysis, the Supreme Court looked at whether or not the narrowly defined electionary communications subject to regulation under federal law were the, quote, functional equivalent, end of quote, of an express advocacy communication that the Supreme Court in Buckley versus Vallejo said could be regulated. And the court found the record evidence that the broadcast ads during this period of time targeted to these groups of people were the functional equivalent of express advocacy and therefore not overbroad. Now, here, one, we have no proof that every communication in Alaska within 30 days of an election is the functional equivalent of express advocacy. In other words, the state has simply not made its burden that this regulation of every communication in the state which mentions directly or indirectly a candidate in Alaska is the functional equivalent of expressly advocating the election defeat of a clearly identified candidate, so they have not met their burden. Two, there are no alternate means of communication, and McConnell involved just broadcast ads so that mailings, newspaper advertisements, and a wide variety of other communications were still allowed that could mention the names of candidates in the context of an election. We think the case of Ward versus Rock against racism is definitive on the point that a restriction of speech must still allow alternate means of that speech being conducted. And, of course, the McConnell case pointed to the fact that this was a very limited statute and did not affect a wide variety of other means by which communications about the positions of candidates on issues could be discussed. And, of course, finally, this statute is vague. That is, while the requirements under federal law were, quote, both easily understood and objectively determinable, end of quote, the phrase direct or indirectly identified candidate is vague. Indirect means, quote, not strong information or open, end of quote. The requirement that the communication involve issues of national, state, or local importance is not determinable, and the fact that you have to determine that this is not an issue communication by determining whether or not it supports or opposes a candidate introduces another level of vagueness. On this point, the district judge said that while this vagueness does concern the court, the vagueness, if any, does not result in the chilling of any substantial amount of legitimate expression. What's wrong with that statement? What is wrong with it is that when we're not talking, well, let's put it this way. The Supreme Court in Buckley upheld the phrase clearly identified from a vagueness challenge because it was ascertainable, because it had to be explicit and unambiguous reference to a candidate. That is the name or the likeness of the candidate. When you say indirect, you don't have to mention or refer to a candidate at all. And one, the listener, could be called upon to determine whether or not the reference is to a particular candidate. And it is exactly that, that is the shifting of the knowledge about who this communication addresses, from the speaker to the listener that Buckley identified as introducing vagueness that the First Amendment in speech does not allow. Secondly, with respect to the level of regulation, in McConnell, in electionary communication, they had to file one report that is that communication expenses only and contributions that were used to pay for those expenses. Alaska requires the full panoply of PAC registration and reporting. In other words, they have to report until they disband. They do one telemarketing script, as indicated in the record, one letter. They spend more than $500 on that. They have to register and report as a PAC in perpetuity, even though they never again mention a candidate. Secondly, and this is not in the briefs, I regret that we did not recognize that pursuant to 15.13.070B, there's also contribution limits. That is, this entity, this non-group entity that is allowed to do an electionary communication, is subject not just to reporting and disclosure requirements, but all contributions to it are subject to a now $1,000, then $500 contribution limit. So it is not true, as the defendants indicate in their brief on multiple occasions, that the only requirement for Alaska Right to Life to engage in electionary communication is to report, is to register and report. Because any contributions that they may use for that activity, in fact the whole organization, is subject then to a $1,000 under current law contribution limit. So what you have is full PAC regulation identical in all material respects to federal regulation of federal PACs. That in Massachusetts Citizens for Life v. FEC, the Supreme Court said, a multi-issue organization like Alaska Right to Life cannot be subject to this full panoply of organizational limitations and requirements as to all their activities unless their major purpose is the election or nomination of candidates. They can be required, as McConnell upheld, a single report. But it is the nature of the organization that is pertinent to whether or not this full range of PAC restrictions and requirements can be opposed. And this statute does not observe that right line. I will reserve the rest of my time. Okay. You've saved 12 seconds, but we'll give you a little more time on that. Thank you. Good morning. May it please the Court. I'm Mike Mitchell. I'm an Assistant Attorney General with the State of Alaska, representing Defendants Miles et al., who collectively comprise the Alaska Public Offices Commission, or APOC. I have three primary points that I wanted to address this morning. Before I do, I'd like to address a couple of representations that were made by counsel for Right to Life. First of all, I think it's misleading to state categorically that the State of Alaska applies the full panoply of PAC requirements under its statute. We have laid out in our brief those requirements that apply. And at the end of our brief, there's a chart that describes the Alaska requirements. And in the text of our brief, we have explained how those differ from the PAC-style reporting requirements that were addressed by the Supreme Court in the Minnesota Right to Life case. Also, counsel stated, and said that it was not addressed in the briefs, but stated here, that AS 15.13.070B appears to impose contribution limits on non-group entities. And it does not appear that way to me. Again, I'm just looking at it for the first time here this morning. But that statute refers to contribution limits imposed on an individual. And the preceding statute, 15.13.067, distinguishes between an individual and a non-group entity. So I would dispute that. The three points that I would like to address this morning are, first of all, how Alaska Rights to Life set up its case, wagering that express advocacy is a bright-line test for constitutionality, a wager that Alaska Rights to Life lost when the Supreme Court issued its decision in McConnell. Secondly, I'd like to discuss the deficiencies in Rights to Life's so-called functional equivalent test for constitutionality, which it presents on appeal. Third, I'd like to discuss the last-minute disclosure that Alaska Rights to Life is a corporation, a disclosure which I think goes to the question as to whether they have standing and is also a relevant disclosure in other respects. Alaska Rights to Life and its counsel brought this case on the eve of the 2002 general election, at a time when the federal BCRA provisions had been challenged, but the district court and, of course, the Supreme Court had not issued their decisions. Alaska Rights to Life set this case up as a facial challenge to numerous Alaska provisions, seeking an immediate decision on their constitutionality. It filed its motion for summary judgment the day after APOC filed its answer on November 26 of 2002, without any affidavits, without any discussion of whether and to what extent their speech actually was burdened, and without any discussion as to whether and to what extent APOC and the public had an interest in the challenge provisions. That's a question I wanted to ask you as I was listening to counsel's presentation. This case is up on cross motions for summary judgment. In your discussion, would you tell me, because of the way those summary judgments were brought, what we should be looking at in the record and how that affects our analysis, please? Because I'm having trouble with that. I'm not too sure what I'm considering, and not because of the way the summary judgments were brought. In other words, we have no affidavits. Is this a pure law issue, period? I think it could be decided purely on the law, because that's the way it was brought initially and argued through summary judgment. However, we did submit, with our cross motion for summary judgment, affidavits explaining the state's interest, and we did go through the full analysis as to the lack of burden and the compelling state's interest. Either way, I think you could decide it squarely on the grounds brought and argued by Right to Life. As far as the state's interest, you're the only one that has any evidence in the record? That's correct. Okay. On page 16 of Right to Life's summary judgment memo, it stated, plaintiff presents this court with a facial challenge to Alaska's campaign disclosure law. The facial review of a statute's constitutionality requires little fact analysis by the court. A plaintiff must establish that there are no set of circumstances under which the act would be valid. So that's the burden of proof that Right to Life set for itself at the outset, and it said that it was challenging these provisions squarely on the law. Right to Life essentially bet the farm on an interpretation that Buckley versus Vallejo established a bright line test of constitutionality. In fact, Right to Life used that term in the major heading in the argument section of its summary judgment memorandum, where it used the heading, Buckley's bright line, the constitutionally mandated express advocacy case. It went on to argue that there was a bright line distinction between express advocacy, which it argued can be regulated, and issue advocacy, which it argued never can be regulated. Right to Life continued that reliance on this bright line test right through to the end of their last substantive pleading to the trial court, their May 30th opposition to APOC's summary judgment motion. The last four sentences, last three sentences of that pleading are, both plaintiff and defendants are before the court asking it to determine whether Alaska's campaign finance reform provisions must include the distinction between issue advocacy and express advocacy, and whether burdens on issue advocacy speech are permissible. The unequivocal answer, they argued, is that issue advocacy may not be infringed upon. Since Alaska does not distinguish between issue advocacy and express advocacy, and imposes burdens on issue advocacy speech, summary judgment in defendants' favor is not warranted, they argued. So all the way through they were relying on this distinction, which they read in Buckley versus Vallejo. Now, just to be clear, and I think I've got this, but I want to make sure I've got my pieces in place. Summary judgment was granted in your favor. That's correct. And we have an appeal from that granted summary judgment. That's the only question in front of us. I believe it's also an appeal from the denial of their vote. I see. So they also think the summary should have gone the other way. That's my understanding, yes, Your Honor. So we're basically asked, in front of us are the cross motions then. Both questions are in front of us. So they bet the farm on that interpretation of a bright line distinction, but they lost that bet. In McConnell, the court said, and I'll quote, the major premise of plaintiff's challenge to BCRA's use of the term electioneering communication is that Buckley drew a constitutionally mandated line between express advocacy and so-called issue advocacy, and the speakers possess an inviolable First Amendment right to engage in the latter category of speech. That position misapprehends our prior decisions, for the express advocacy restriction was an end point of statutory interpretation, not a first principle of constitutional law. Well, rightfully, I still seem somewhat stunned that the court ruled this way. Having had their theory rejected, they argue now on appeal that there is a new per se bright line rule of constitutionality, their so-called functional equivalence test. In support of that test, they cite their own counsel's law review article for the proposition that McConnell established a functional equivalent test for constitutionality. Incidentally, that same article asserts, and I quote, McConnell sowed the seeds of its own reversal by its disingenuous interpretation of Buckley and MCFL and its failure to protect the core of the First Amendment. So it appears that that article has a bit of an agenda itself. But this functional equivalence test really makes no sense, and it has no basis in McConnell. In essence, they're arguing that there is a constitutional limit, a per se limit to regulation, such that it is per se unconstitutional to require disclosure of expenditures for campaign communications, unless those communications are express advocacy or the functional equivalent of express advocacy. And yet, as we've heard the court just said, the express advocacy restriction was an endpoint of statutory interpretation and not a first principle of constitutional law. So we would submit that it makes no sense for Alaska Right to Life to argue, as it is here, that express advocacy or its functional equivalent are a first principle of constitutional law. It's just illogical in the overall context of the McConnell opinion. It also has no basis upon a close reading of the text of McConnell. There, the court has separate sections of the opinion that address, first, the constitutionality of the definition of electioneering communications, and next, the constitutionality of the BCRA's disclosure requirements. In neither of those sections is there a reference to functional equivalence. That reference appears in a later section addressing the constitutionality of BCRA's prohibition of corporate and labor disbursements for electioneering communications. The term appears to be used only once in rejecting plaintiff's argument that a ban on disbursements for electioneering is not justified by the same justifications that support the ban on disbursements for express advocacy because the communications are the functional equivalent. But this says nothing about what those justifications are and what justifications are needed to support requirements to disclose expenditures for electioneering disbursements. So in short, with this functional equivalence test, Alaska Right to Life is looking for a per se rule without analysis, and it has latched on to a passing reference, and it is proposing a rule which really has no logical or textual basis. Note also that if there is a functional equivalent test, and certainly we don't conclude that there is, one could only conclude that the message, the communication here, is the functional equivalent of express advocacy. That communication is set forth in the appellant's brief, page six I believe it is. Communication was part of a telemarketing script which says, Alaska Right to Life is always on the forefront of implementing pro-life legislation within our state, such as banning partial birth abortions, et cetera. We believe these are important issues affecting all Alaskans. Frank Murkowski supports Alaska Right to Life's pro-life vision by supporting a ban on partial birth abortion. But Fran Ulmer stands in opposition to these measures. Please be sure to vote. So that is, we submit, if you get to the functional equivalency test, that is the functional equivalent of express advocacy. It indicates an exhortation to vote for Frank Murkowski and to vote against Fran Ulmer. I'd like to turn now to the disclosure that Alaska Right to Life is in fact a corporation. That was a disclosure made at the beginning of the reply brief, and it's made along with a lengthy footnote which essentially says, well, it's a corporation, but it doesn't matter to our analysis. Well, it does matter according to Right to Life's own analysis. I'd like to refer to several sections of their opening brief in which it does matter. In their summary of the argument at page 10, Right to Life states that APOC is, quote, applying the Alaska electioneering communication to an association, they emphasize, when the only recognized compelling interest is the interest in regulating corporations. Again, they emphasize. So in their own opening brief, they're setting up this distinction between corporations, which as we read it includes so-called Right to Life type corporations and associations. Again, at pages 35 to 36 of their opening brief, they expand on this, presenting analysis that the state's interest is compelling where a corporation, including an MCFL type corporation, is involved, as distinguished from an association. At pages 24 to 25 of their brief, they emphasize that because the communication would not be done by a corporation, again, they emphasize corporations, it is not the functional equivalent of express advocacy. And then at pages 38 to 39 of their opening brief, Right to Life concedes that notice to donors may be constitutional for MCFL type corporations, again, emphasizing the term corporations. So this is a distinction with a difference by their own analysis. It's also a distinction with a difference in the Supreme Court's analysis, most specifically in the 2003 decision in FEC versus Beaumont. Beaumont upheld the federal prohibition against Right to Life corporations making campaign contributions, which certainly is a different context here. But in the analysis, the court looked at these so-called Right to Life type corporations and found attributes of them that warranted regulation. The court said they, like their for-profit counterparts, benefit from significant state-created advantages and may well be able to amass substantial political war chests. The court said not all corporations that qualify for favorable tax treatment under 501c4 of the Internal Revenue Code lacks substantial resources, and this category includes some of the nation's most politically powerful organizations. The court said non-profit advocacy corporations are, moreover, no less susceptible than traditional business companies to misuse as conduits for circumventing the contribution limits imposed on individuals. So again, this distinction is one with a difference, both by Right to Life's own analysis and by the Supreme Court's analysis in Beaumont. You indicated that under this sort of heading of your argument, you might address the standing question, which continues to trouble me a little. Why does this organization have standing when in fact a related organization, something he describes as their PAC, was able to, without any significant delay, engage in precisely the telemarketing campaign that they could not because they had not complied with the statute? Well, I think it does not have standing because these so-called separate and distinct organizations are in fact one and the same. What evidence do we have in the record that these organizations are, in your terms, one and the same? The evidence in the record is the interchangeable use of these organizations on their website, also a discovery response in which they objected that it would be burdensome to unwind and report the financial transactions back and forth between those organizations. And finally, I think we have the evidence that at the last minute they've discovered that in fact it's a corporation here and not an association. Why does the fact that it's a corporation influence that analysis? I'm not sure if I quite picked up on that. Well, not the facts so much as the fact that they have not been able to figure this out until the last minute such that their own counsel apparently don't know whether there's three or two different organizations, what the separation is, and whether there is any meaningful separation. Was this question of standing investigated or hashed out in the district court at all? I don't recall that, Your Honor. We did submit earlier on a motion to dismiss and it addressed justiciability principles. It may have addressed standing. I recall it addressed rightness and mootness. I don't recall at this point to what extent it focused on standing. If the question is sort of statutory standing or prudential standing, I'm not so concerned. But if it's Article III standing, I think we have to be concerned, and it doesn't even matter whether we live a year below. And I'm not entirely sure whether there's Article III standing here. And is your contention there's no Article III standing? Yes, that would be our contention. And can you tell me again why you think there's no Article III standing? Because they have not demonstrated any actual injury to their interests. Now, their response to the same question before when I asked the question earlier was, well, they don't want to go through all the regulation that would be applicable to a PAC. Why is that not a sufficient answer? I believe that actual injury must be shown, and I believe also that the fact that there is a PAC in existence would allow them to make these communications in this situation. But there's more burden on a PAC than they think should be imposed upon them as a precondition for engaging in this activity? I'm sorry? That is to say, a PAC is more regulated than they think they can be regulated pursuant to statute? Excuse me, pursuant to the Constitution? Well, Alaska regulates them as a non-group entity, and so, yes, their position is that that imposes more regulation than they believe they should be subject to. Well, this is way beyond my review, but now I'm getting a little lost here. Let's assume that the position of the appellant is upheld, that is, that this is facially unconstitutional. Okay? Now, what happens to this law with regard to their PAC? I believe it would not apply to the law with regard to their PAC, but the PAC is regulated as a group under the terminology of Alaska law. So their challenge is only is this law facially unconstitutional as to a non-group? As I understand it, yes. As to a non-group, but they're a corporation. Right. How does Alaska, and I should know this, but I can't do it off the top of my head, how does the statute regulate a corporation, not as a non-group, right? How does it regulate a corporation? Under what heading? I'm running out of memory. I do believe they would still be regulated as a non-group entity. I see. Okay. But that would then mean that they're establishing, as they've tried, to have a fund of money from wherever source a quote non-group does do something that a PAC couldn't do. But it sounds like you're trying to apply the same horribles to this group from a governmental interest as you are to the PACs because they're all in the same section of the law. Is that right? Am I getting cockeyed here? You see what I'm saying? In other words, the PAC and the non-group are in the same reporting law, if you will, the same law, right? I believe there may be some differences between the PAC and the so-called non-group entity because a PAC is called a group, which is referred to separately and I think subject to somewhat different requirements than a non-group entity. But in any event, because this corporation thing has messed up my review thinking, but if the plaintiff prevails, the appellant prevails, that group will do something and not have the requirements that the PAC group could maybe do but would have requirements. I think that's correct. Okay. Whatever that means, but okay. Okay. You're over time if you want a sentence or two to wrap up. Okay. I would just like to assert affirmatively that if the court needs to get to the point of running through the full interest balancing analysis that we have fully done that analysis and demonstrated that the state does have a compelling interest and that the statutes are narrowly tailored to meet that interest. Okay. Thank you. Thank you. Mr. Bopp, you saved I think 12 seconds or so, but let's start out giving a couple of minutes and see what we've done. Thank you very much, Your Honor. We don't want to cut you off. To clarify our challenge, the electioneering communication is added to the word expenditure. Corporations and labor unions are prohibited from making expenditures, so they're prohibited from doing electioneering communication. Only a non-group entity or group, which is a traditional PAC, or an individual can make an expenditure. So they're forcing these electioneering communications into a PAC or you can't do them at all. Now, the non-group entity and the PAC are regulated in the same way, and the legislative history is quite clear about this. By putting the phrase electioneering communication into expenditure, you have non-group entities and groups are subject to all the same fundamental requirements. There are contribution limits to non-group entities and to groups. There's this panoply of reporting, periodic reporting, prior registration. Now, there are also other requirements, such as you must notify your contributors, if you're a non-group entity, that you may use these funds. Secondly, the motion for a summary judgment is supported by an affidavit, the verified complaint. Verified complaints under the law are the same thing as an affidavit, and we, of course, cited it. Is that right? Yes. And if you wish us to submit to authority, I'd be pleased to. I'm sure it's a question of law, and I can find a number. Right, okay. Well, in summary judgment, maybe I'm wrong, now we're doing summary judgment 101, the facts in a verified complaint go in in support of the summary judgment. Now, if they go forward with other facts that you don't counter with an affidavit, bingo. But you've got your facts in your verified complaint supporting your summary judgment motion. So long as it's not contradicted. It's not contradicted. Okay. Third, I've already mentioned contribution limits. I cited the statute that says an individual may contribute no more than, now, $1,000 per year to a non-group entity. If you look at their website, and I was really kind of surprised to find this, if you look at their website, there's a manual, and there's a nice chart, not the one they attached, that explains the contribution limits to non-group entities. I see my time is up. Thank you. Thank you very much for a helpful argument on both sides. The case of Alaska Right-to-Life Committee v. Miles is now submitted for argument. We'll take a ten-minute recess before we come back and do the last case, Alaska Department of Health and Social Services. All rise. This court now stands at 8-7. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Goodwin, Brunetti, W. Fletcher